# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, *ex rel*. HECTOR BALDERAS, Attorney General for the State of New Mexico, | Civil Action No. 1:20-cv-00143-NF-KHR Hon. Nancy Freudenthal |
| *Plaintiff*, | <u>ORAL ARGUMENT REQUESTED</u> |
| v. | |
| GOOGLE, LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## <u>GOOGLE's MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT</u>

**TABLE OF CONTENTS**

MOTION TO DISMISS ...................................................................................................1

MEMORANDUM IN SUPPORT ....................................................................................1

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

    A.    Google Provides G Suite For Education To Schools For Free ..............................2

    B.    Google's Privacy Commitments For GSFE .........................................................3

    C.    Google Relies On Schools To Provide Or Obtain Parental Consent For Students Using The Core And Additional Services ...............................................4

    D.    The Attorney General Files Suit ..........................................................................5

LEGAL STANDARD ......................................................................................................5

ARGUMENT ...................................................................................................................6

I.    THE COMPLAINT FAILS TO PLEAD A COPPA VIOLATION ....................................6

    A.    COPPA Requires "Reasonable Efforts" To Obtain Consent .................................7

    B.    FTC Guidance:  Operators May Rely On Schools To Provide Or Obtain Consent ..................................................................................................................7

    C.    Google Follows The FTC's Guidance .................................................................10

    D.    Following FTC Guidance Is Reasonable .............................................................11

    E.    The Attorney General's Remaining COPPA Theories Fail .................................14

II.    THE COMPLAINT IDENTIFIES NO UPA VIOLATION .............................................15

    A.    The Attorney General Has Not Alleged Any Sale, Lease, Rental, or Loan In Connection with GSFE .....................................................................................15

    B.    The Complaint Identifies No Fraudulent Or Misleading Statement Or Omission That Violates The UPA ......................................................................16

        1.    Most alleged misrepresentations in the Complaint are insufficiently pled ...........................................................................................................17

        2.    The Complaint does not plausibly allege that Google fails to comply with the identified privacy commitments ...............................................18

        3.    Google's publication of its Privacy Notice defeats any omissions claim ..20

    C.    The Attorney General's COPPA-Based UPA Claims Fail On The Merits And Are Preempted ...............................................................................21

    D.    The Complaint's "Unconscionable" Practices Claim Also Fails Because Nothing Alleged In The Complaint Is Unconscionable .....................................23

III.    THERE IS NO INTRUSION UPON SECLUSION ......................................................24

CONCLUSION ................................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarado v. KOB-TV, LLC*,
  493 F.3d 1210 (10th Cir. 2007)............................................................... 4, 20, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................5

*Auer v. Robbins*,
  519 U.S. 452 (1997) ...................................................................................... 12, 13

*New Mexico ex rel. Balderas v. Tiny Lab Productions*,
  No. 18-854 MV/JFR, 2020 WL 2065275 (D.N.M. Apr. 29, 2020) ..................... 11, 16, 23, 26

*Barreras v. Travelers Home & Marine Ins. Co.*,
  No. 12-CV-0354 RB/RHS, 2012 WL 12870348 (D.N.M. Oct. 17, 2012)............................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 5, 15

*Choate v. Champion Home Builders Co.*,
  222 F.3d 788 (10th Cir. 2000) ..................................................................................22

*Dahlberg v. Avis Rent A Car Sys., Inc.*,
  92 F. Supp. 2d 1091 (D. Colo. 2000) ...................................................................................12

*Dine Citizens Against Ruining Our Env't v. Jewell*,
  No. CIV 15-0209 JB/SCY, 2015 WL 4997207 (D.N.M. Aug. 14, 2015).............................12

*Dubbs v. Head Start, Inc.*,
  336 F.3d 1194 (10th Cir. 2003)...................................................................................... 26, 27

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) ...................................................................................... 21, 22

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992) ...................................................................................... 22, 23

*Kelly v. Advanta Corp.*,
  No. CV 02-250 LH/RHS, 2003 WL 27385023 (D.N.M. July 1, 2003)................................25

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ...................................................................................... 12, 13

*Koch v. Koch Indus.*,
    203 F.3d 1202 (10th Cir. 2000)................................................................................5, 17

*Manigault-Johnson v. Google, LLC*,
    No. 2:18-CV-1032-BHH, 2019 WL 3006646 (D. S.C. Mar. 31, 2019)..........................22, 26

*Michelson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    669 F. Supp. 1244 (S.D.N.Y. 1987)................................................................................17

*Mitchell v. Comm'r*,
    775 F.3d 1243 (10th Cir. 2015)......................................................................................12

*SEC v. Nacchio*,
    438 F. Supp. 2d 1266 (D. Colo. 2006) ...........................................................................18

*Nanodetex Corp. v. Sandia Corp.*,
    No. 05-cv-1041, 2007 WL 4356154 (D.N.M. July 26, 2007) .............................................16

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ....................................................................................25, 26

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) .........................................................................................5

*Schwartz v. State Farm Mut. Auto. Ins. Co.*,
    No. 1:18-CV-00328-WJ-SCY, 2018 WL 4148434 (D.N.M. Aug. 30, 2018) ........................24

*Sedillos v. United Collection Bureau, Inc.*,
    No. 10-CV-1063 WJ/WDS, 2011 WL 13289655 (D.N.M. Aug. 17, 2011)...........................23

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ......................................................................................................22

*Summit Elec. Supply Co. v. Int'l Bus. Machs. Corp.*,
    No. 1:07-CV-0431 MCA/DJS, 2009 WL 9087259 (D.N.M. Sept. 30, 2009) ........................17

*Two Old Hippies, LLC v. Catch the Bus, LLC*,
    784 F. Supp. 2d 1200 (D.N.M. 2011)...........................................................................17, 18

*Van Woudenberg v. Gibson*,
    211 F.3d 560 (10th Cir. 2000), *abrogated on other grounds by McGregor v.*
    *Gibson*, 248 F.3d 946 (10th Cir. 2001) ..............................................................................6

*Williams v. Foremost Ins. Co.*,
    102 F. Supp. 3d 1230 (D.N.M. 2015)..............................................................................15

*Yunker v. Pandora Media, Inc.*,
    No. 11–CV–3113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...............................25

**State Cases**

*Dollens v. Wells Fargo Bank, N.A.*,
    356 P.3d 531 (N.M. Ct. App. 2015) ................................................................. 18

*Hicks v. Eller*,
    280 P.3d 304 (N.M. Ct. App. 2012) ................................................................. 16

*State ex rel. King v. B&B Inv. Grp., Inc.*,
    329 P.3d 658 (N.M. 2014) ...................................................................... 23, 24

*Moore v. Sun Publ'g Corp.*,
    881 P.2d 735 (N.M. Ct. App. 1994) ........................................................... 24, 25

*Portales Nat'l Bank v. Ribble*,
    75 P.3d 838 (N.M. Ct. App. 2003) ................................................................. 24

**Federal Statutes**

Children's Online Privacy Protection Act, 15 U.S.C. § 6501, *et. seq* ................................. *passim*

15 U.S.C. § 6502(b) ........................................................................................ 6, 12

15 U.S.C. § 6502(d) ....................................................................................... 12, 21

15 U.S.C. § 6505 ............................................................................................... 22

**State Statutes**

N.M. Stat. Ann. § 57-12-2(D) ......................................................................... 15,18

N.M. Stat. Ann. § 57-12-2(E) ............................................................................. 23

N.M. Stat. Ann. § 57-12-3 ................................................................................. 15

**Regulations**

16 C.F.R. § 312.2 ............................................................................................... 7

16 C.F.R. § 312.3 ............................................................................................... 7

16 C.F.R. § 312.7 ............................................................................................. 15

64 Fed. Reg. 59,888 (Nov. 3, 1999) ................................................... 7, 8, 9, 11, 13

84 Fed. Reg. 35,842 (July 25, 2019) .................................................................. 8, 9

**Other Authorities**

*Children's Online Privacy Protection Act of 1998: Hearing on S. 2326 Before the
    S. Comm. on Commc'ns*, 150th Cong., 115 Cong. 7 (Sept. 23, 1998)
    (statement of Sen. Richard H. Bryan) ...................................................................................22

Federal Rule of Civil Procedure 9(b) ........................................................................... 1, 5, 17, 18

Federal Rules of Civil Procedure 12(b)(6) .............................................................................1, 5

FTC, *Protecting Consumer Privacy and Security*, https://tinyurl.com/yc4jbpqv
    (last visited May 29, 2020) ...............................................................................................13

Kevin M. Stack, *Preambles as Guidance*, 84 Geo. Wash. L. Rev. 1252, 1281
    (2016) ................................................................................................................................13

New Mexico Local Rule of Civil Procedure 7.1(a) .....................................................................5

Restatement (Second) of Torts § 652B .....................................................................................25

## MOTION TO DISMISS

Defendant Google LLC by counsel and pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the Attorney General's Complaint in its entirety. Google relies upon and incorporates the arguments and legal authorities set forth in the accompanying Memorandum in Support.

## MEMORANDUM IN SUPPORT

### INTRODUCTION

G Suite For Education ("GSFE") is a free suite of tools (including Gmail, Google Drive, Google Calendar, and Google Classroom) that Google makes available to schools across the country. GSFE has become a lifeline for schools in recent months as students across the country have transitioned to remote, online learning as a result of the COVID-19 pandemic and nationwide school closures.

In this case, New Mexico's Attorney General accuses Google of breaching the Children's Online Privacy Protection Act ("COPPA") by relying on schools to either provide or obtain parental consent for student's use of GSFE, rather than reaching out itself to each student's parents for consent. But Google's practice makes good sense: schools, unlike Google, know who each student's parents are and, unlike Google, are typically in regular contact with parents to obtain consent for a variety of other in-school activities. Schools therefore are well-positioned to obtain parental consent. And that's not just Google's opinion. Recognizing the practical advantages schools have in this area, the Federal Trade Commission ("FTC") has issued controlling guidance authorizing companies like Google to rely on schools to provide or obtain parental consent. The Attorney General's COPPA claim thus fails as a matter of law. The Attorney General's state law claims fare no better. The AG has failed to allege anything that

1

would constitute an unfair trade practice, much less the extreme conduct necessary to support the tort of intrusion on seclusion. The Complaint should be dismissed.

## BACKGROUND

### A.    Google Provides G Suite For Education To Schools For Free

GSFE is a free collection of products that Google offers to K-12 schools across the country. Compl. ¶ 20. GSFE gives teachers, students, and administrators the opportunity to integrate technology into their classrooms to complete assignments and work collaboratively. *See id.* ¶¶ 20-23.

Schools who participate in GSFE can assign a GSFE account (*i.e.*, a username and password) to school personnel and students (together "users"). *Id.* ¶ 37. With these accounts, users can access a suite of services, known as the "Core Services," that have been adapted for use within a school or organization, including Gmail (email), Calendar, Contacts, Drive (storage), Docs (word processing), Groups (discussion groups), Sheets (spreadsheets), Slides (presentations), Chrome Sync (device synchronization), Hangouts Meet/Chat (chat and conferencing), Vault (archiving), and Classroom (class-specific discussion groups, assignment distribution, feedback). *See* Compl. ¶ 21; Ex. 1 (GSFE Privacy Notice) to Declaration of Peter G. Neiman ("Neiman Decl."); *see also* Request for Judicial Notice ("RJN").[1]

Google also offers general consumer services, like YouTube, that are not part of the Core Services. *See* Neiman Decl. Ex. 1 at 1-2. For K-12 schools, these "Additional Services" are off by default and *cannot* be accessed using GSFE accounts unless a school decides to affirmatively grant access. *Id.*; Neiman Decl. Ex. 2 (GSFE Agreement, dated September 2018) at 2 ("If Customer does not desire to enable any of the Additional Products, Customer can enable or

---

[1] Certain exhibits attached to the Neiman Decl. are also addressed in Google's contemporaneously filed Request for Judicial Notice ("RJN").

disable them at any time through the Admin Console.").  Schools agree to obtain parental

consent before allowing users under 18 access to Additional Services.  Google provides schools

with resources about communicating with parents, including a template to help schools provide

notice and obtain consent.  Neiman Decl. Ex. 3 (Notice template).

    **B.**        **Google's Privacy Commitments For GSFE**

      Google takes student privacy seriously.  It publishes a Privacy Notice for GSFE that

discloses what information it collects, how that information is used, and how that information is

shared.  *See generally* Neiman Decl. Ex. 1.  The GSFE Privacy Notice explains that no

advertising is shown in the Core Services, and that all data collected in the Core Services is used

solely to provide the Core Services.  *Id*. at 1.  The GSFE Privacy Notice also tells parents how

they can access their child's personal information or request that it be deleted, as well as how

they can stop further collection or use of their child's data.  *Id.* at 3.

      The GSFE Privacy Notice also addresses Additional Services.  It explains that Additional

Services may display advertising, and that data collected in Additional Services is treated

differently from data collected in Core Services.  Data collected in Additional Services may be

used for a variety of purposes, including providing Google services, maintaining them,

improving them, developing new Google services, and offering users more tailored content, like

better search results.  *Id.* at 1-2.  However, Google commits that for GSFE users in primary and

secondary (K-12) schools, Google does not "use any user personal information (or any

information associated with a [GSFE] Account) to target ads, whether in Core Services or other

Google services accessed while using a [GSFE] account."  *Id.* at 2.

      In addition to the privacy commitments in the GSFE Privacy Notice, the GSFE Core

Services are also subject to the School Service Provider Pledge To Safeguard Student Privacy

(the "Student Privacy Pledge" or "Pledge").  Neiman Decl. Ex. 5 (Student Privacy Pledge).[2]  The

Pledge is a voluntary set of best practices developed by privacy experts that applies when a

signatory "is operating in its capacity as a provider of an online or mobile application, online

service or website that is both designed and marketed for use in United States elementary and

secondary educational institutions." *id.* at 2.  By its own terms, the Pledge does *not* apply when a

signatory "is operating in its capacity as a provider of general audience software, applications,

services or websites not designed and marketed for schools."  *Id.*  Google has published and

made readily available Frequently Asked Questions about GSFE that explain that the "additional

services outside of the G Suite core service" are "not governed by the Student Privacy Pledge."

Neiman Decl. Ex. 4 (GSFE Privacy and Security FAQs) at 4.

### C.   Google Relies On Schools To Provide Or Obtain Parental Consent For Students Using The Core And Additional Services

When schools contract with Google to use GSFE, they agree to provide or obtain the

requisite consent for the use of the services.  Neiman Decl. Ex. 2 at 3.  With regard to the Core

Services, the schools themselves "consent[] as required under the Children's Online Privacy

Protection Act to the collection and use of personal information in the Services, described in the

G Suite for Education Privacy Notice."  *Id.* at 3.  With regard to the Additional Services, schools

commit to obtain parental consent before authorizing the use of Additional Services for users

under 18.  *Id.*  The Complaint does *not* allege that any New Mexico schools breached this duty

by failing to obtain parental consent before authorizing access to Additional Services.

---

[2] The Court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation omitted).   Because Plaintiff cites and excerpts the Pledge throughout its Complaint as central to its claims about Google's alleged misrepresentations, *see, e.g.*, Compl. ¶¶ 25-28, it is properly considered on this motion.

D.      **The Attorney General Files Suit**

On February 20, 2020, the Attorney General filed a Complaint against Google, claiming that Google's provision of GSFE to New Mexico schools violated COPPA and its implementing regulations, the New Mexico Unfair Practices Act ("UPA"), and the New Mexico common-law prohibition against intrusion upon seclusion.  The Attorney General filed the Complaint without first directing any questions, document requests, or subpoenas to Google.  Google informed the Attorney General of its intent to file this motion to dismiss in accordance with Local Rule 7.1(a), and he stated his intention to oppose it.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must allege sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In resolving a motion under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation omitted).  But a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Moreover, fraud claims (such as the fraud-based unfair trade practices claim here) must meet more stringent standards.  *See* Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *Id*.  Thus, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).

Finally, the court may take judicial notice of facts which are a matter of public record when deciding a motion to dismiss.  *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).[3]

## ARGUMENT

The Complaint should be dismissed.  The central allegation—that Google's practices for obtaining parental consent violate COPPA—fails as a matter of law because the challenged practices comply with authoritative federal guidance.  To the extent the UPA claim alleges conduct separate from the COPPA claim, it fails because the UPA does not apply to services provided for free, and in any event the Complaint fails to identify any Google representation that is false or misleading or any practice that "shocks the conscience."  Finally, the Complaint's claim for intrusion upon seclusion fails because the routine and amply disclosed data collection at issue here—tracking usage of online services—is not even close to the required "highly offensive" intrusion on privacy.

## I.    THE COMPLAINT FAILS TO PLEAD A COPPA VIOLATION

Congress entrusted the development and implementation of COPPA's requirements to the expertise of the FTC.  COPPA does not by itself forbid or prescribe anything.  Rather, COPPA authorizes the FTC to adopt regulations requiring covered operators of online services to provide notice to, and obtain consent from, parents before collecting data from children 13 and under. *See* 15 U.S.C. § 6502(b)(1)(A).  COPPA makes it unlawful to breach those regulations.  *Id.* § 6502(a)(1).

---

[3] The judicial notice standard and its application to certain documents relied upon in this Memorandum is addressed in Google's contemporaneously filed Request for Judicial Notice.

The FTC adopted regulations (the "COPPA Rule") on parental consent in 1999.  *See* 16 C.F.R. § 312.3; *Children's Online Privacy Protection Rule*, 64 Fed. Reg. 59,888 (Nov. 3, 1999). To help industry conform its conduct to the COPPA Rule, the FTC has published interpretive guidance on the COPPA Rule.

The Complaint alleges that Google violates the FTC's COPPA Rule.  But the practices at issue squarely conform to the FTC's guidance.  Following the FTC's guidance cannot violate the COPPA Rule, which the FTC itself wrote.  The Attorney General's COPPA claims should be dismissed.

## A.     COPPA Requires "Reasonable Efforts" To Obtain Consent

The COPPA Rule requires covered operators to obtain "verifiable" parental consent and defines "[o]btaining verifiable consent" to mean "*making any* reasonable *effort*" to provide notice and obtain consent.  16 C.F.R. § 312.2 (emphasis added); *see also id.* § 312.5 ("Any method to obtain verifiable parental consent must be reasonably calculated, in light of available technology, to ensure that the person providing consent is the child's parent.").  These word choices reflect a broad, flexible standard.  Compliance does not necessarily require obtaining consent in every case, but instead "making" an appropriate "effort" to do so.  That effort can be "any reasonable" one.

## B.     FTC Guidance:  Operators May Rely On Schools To Provide Or Obtain Consent

Interpreting its "reasonable efforts" standard, the FTC has repeatedly affirmed that operators may rely on schools to provide or obtain consent.  The Statement of Basis and Purpose for the COPPA Rule ("Preamble") squarely states: "the Rule does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as the parents' agent in the process."  COPPA Rule, 64 Fed. Reg. at 59,903; *id.* at

7

59,909.  Additionally, the FTC made clear that "where an operator is authorized by a school to collect personal information from children, after providing notice to the school ..., *the operator can presume that the school's authorization is based on the school's having obtained the parent's consent*."  *Id.* at 59,903 (emphasis added).  The FTC thus concluded that "the Rule should not hinder businesses that provide services to schools."  *Id.* at 59,909.

The FTC reaffirmed this position in subsequent guidance that explained when schools may act as "agents" and provide the actual consent, as opposed to an "intermediary" obtaining the consent from parents.  The FTC elaborated:

> Many school districts contract with third-party website operators to offer online programs solely for the benefit of their students and for the school systems. ... In these cases, *the schools may act as the parent's agent and can consent to the collection of kids' information on the parent's behalf.*

Neiman Decl. Ex. 6 (Fed. Trade Comm'n, Complying with COPPA: Frequently Asked Questions, Mar. 20, 2015) at 2 (emphasis added).  In this "educational context," the "operator collects personal information from students for the use and benefit of the school, and for no other commercial purpose."  *Id.*  Outside of this purely educational context—if collected information will be used for "commercial purposes in addition to the provision of services to the school"— parental consent is still necessary.  *Id.* at 3.  There, schools may "act[] as intermediaries between operators and parents in the notice and consent process."  COPPA Rule, 64 Fed. Reg. at 59,903.

More recent FTC publications continue this approach.  In a July 2019 request for public comment on its implementation of the COPPA Rule, the FTC quoted the language from the Preamble above with approval, restating that "the Rule 'does not preclude schools from acting as intermediaries between operators and schools in the notice and consent process, or from serving as the parents' agent in the process.'"  *Request for Public Comment on the Federal Trade Commission's Implementation of the Children's Online Privacy Protection Rule*, 84 Fed. Reg.

35,842, 35,845 (July 25, 2019) (quoting COPPA Rule, 64 Fed. Reg. at 59,903).  Indeed, the FTC sought comment on whether it should go further and create a "specific exception to parental consent for the use of education technology used in the schools."  *Id.*  Still more recently, in guidance responding to the COVID-19 pandemic, the FTC "[s]tress[ed] that COPPA is not a barrier to schools providing robust remote learning opportunities through ed tech services." Neiman Decl.  Ex. 7 (L. Schifferle, *COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus*, Fed. Trade Comm'n, Apr. 9, 2020) at 1.  It also made clear that "schools can consent on behalf of parents to the collection of student personal information" if "such information is used for a school-authorized educational purpose and for no other commercial purpose."  *Id.*

The FTC's guidance is sensible.  Schools already obtain parental consent for a wide range of things, ranging from field trips to use of student images.  *See, e.g.*, COPPA Rule, 64 Fed. Reg. at 59,903 ("[M]any schools already seek parental consent for in-school Internet access at the beginning of the school year.").  The Attorney General suggests it would be preferable for operators of online services to obtain consent directly from parents, using "an online form, a toll-free number, [or] a video-conference call." Compl. ¶ 54.  But these methods have their challenges—such as ensuring that the person providing the consent is in fact the custodial parent. In contrast, schools have close, long-term relationships with parents, forged through parent-teacher conferences, PTA meetings, and countless other interactions, and are therefore well-positioned to obtain truly verifiable consent.

Experts also recognize schools' advantages in obtaining consent.  For example, at a 2010 FTC roundtable, agency staff asked a panel about mechanisms for obtaining consent.  One privacy advocate responded:

> The real problem here has always been … you never know if you
> have got a parent, and not only if you have got a parent, you don't
> know if you have the custodial parent who has the legal rights over
> this kid, and the only people who know that, if the kids are in
> school, are schools. … Unless you work with the schools, you're
> never going to get the stuff, because nobody else has this
> information.

Neiman Decl. Ex. 8 (Fed. Trade Comm'n, COPPA Rule Review Roundtables, June 2, 2010) at

6-7 (numbered 259-260).

### C.      Google Follows The FTC's Guidance

The approach Google uses to obtain consent for GSFE—with respect to Core Services

and Additional Services—follows the FTC guidance just described.  *First*, Core Services are a

set of Google services that have been adapted for use within a school.  The GSFE Privacy Notice

states: "User personal information collected in the Core Services is used only to provide the Core

Services."  Neiman Decl. Ex. 1 at 1.  Information collected in the Core Services is thus "used for

a school-authorized educational purpose and for no other commercial purpose."  Neiman Decl.

Ex. 6 at 2.  In this context, the FTC allows schools to "act as the parent's agent and []consent."

*Id.*  Google's contract with schools accordingly provides that, if a school "allows End Users

under the age of 13 to use the Services," the school "consents as required under [COPPA] to the

collection and use of personal information in the Services, described in the G Suite for Education

Privacy Notice, from such End Users."  Neiman Decl. Ex. 2 at 3.  Google provides schools with

the required notice of its privacy practices through the GSFE Privacy Notice, Neiman Decl. Ex.

1, which is both incorporated into the GSFE Agreement and readily available online, *see G Suite

for Education Privacy Notice*, Google for Education,

https://gsuite.google.com/terms/education_privacy.html.

*Second*, Additional Services are general consumer services that can be accessed with a K-

12 GSFE account if the school's GSFE administrator authorizes such access.  Unlike the Core

Services, data collected in the Additional Services is not used solely to provide the Additional Services.  Instead, the GSFE Privacy Notice explains that Additional Services data is used for a variety of purposes described in Google's Privacy Policy, including providing, maintaining, and improving Google services and developing new Google services.  Neiman Decl. Ex. 1 at 2.

Google does not rely on a school to provide consent for Additional Services as the parents' agent.  Instead, consistent with FTC guidance, Google engages schools as intermediaries to obtain parental consent.  In their agreement with Google, schools agree to "obtain parental consent for the collection and use of personal information in the Additional [Services]" before allowing any "End Users under the age of 18 to use those services."  Neiman Decl. Ex. 2 at 3. Consistent with the FTC's guidance, Google presumes that schools authorizing access to Additional Services have obtained the requisite parental consent.  *See* COPPA Rule, 64 Fed. Reg. at 59,903 ("[T]he operator can presume that the school's authorization is based on the school's having obtained the parent's consent.").

Google's approach to providing notice and obtaining consent for both Core Services and Additional Services thus conforms precisely with FTC guidance.[4]

D.    **Following FTC Guidance Is Reasonable**

The Attorney General's COPPA claim asks the Court to find that Google acted unreasonably when it did the very thing the FTC's guidance endorses:  rely on schools to obtain or provide parental consent.  But doing what the agency charged with implementing a statute

---

[4] *New Mexico ex rel. Balderas v. Tiny Lab Productions*, No. 18-854 MV/JFR, 2020 WL 2065275 (D.N.M. Apr. 29, 2020) is not to the contrary.  That case considered consent and reliance issues under COPPA *outside* the context of schools, and thus sheds no light on the FTC's specific guidance related to schools at issue here.  Moreover, the decision in that case is not final, as the defendants have filed a motion for reconsideration, or in the alternative interlocutory appeal, that remains pending.  *See* Google's Mot. for Recons. or Interlocutory Appellate Review, *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, No. 1:18-cv-00854-MV-JFR (May 28, 2020), ECF No. 93.

advises you to do is, as a matter of law, reasonable.  *See Dine Citizens Against Ruining Our Env't v. Jewell,* No. CIV 15-0209 JB/SCY, 2015 WL 4997207, at *32 (D.N.M. Aug. 14, 2015) ("The agency's view [of a regulation] can be relied upon, unless it is, so to speak, beyond the pale.") *aff'd*, 839 F.3d 1276 (10th Cir. 2016); *Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1108 (D. Colo. 2000) ("[T]he court . . . finds significant the fact that the Justice Department, which is the agency primarily charged with implementation and enforcement of title III of the [American's Disabilities Act], has found that [defendant's] process complies with the statute. . . . [I]t is highly suggestive that [defendant's] procedures are, in fact, reasonable . . . .").

Congress delegated authority to the FTC to implement COPPA, *see* 15 U.S.C. § 6502(b)(1)(A), and while Congress gave the states authority to bring COPPA enforcement actions, *see id.* § 6504(a), it expressly limited their authority to "impose any liability … in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section," *id.* § 6502(d).  The AG thus cannot proceed against Google on COPPA theories that run directly contrary to FTC guidance.

This conclusion is buttressed by the long line of Supreme Court precedent requiring courts to defer to agencies' interpretations of their own regulations "unless [the interpretation is] plainly erroneous or inconsistent with the regulation or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question."  *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015) (citation omitted).  This "*Auer* deference," *see Auer v. Robbins*, 519 U.S. 452 (1997), "gives an agency significant leeway to say what its own rules mean," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019)  If there is any doubt that relying on schools to provide or obtain consent is a "reasonable effort" under the COPPA Rule, this Court must defer to the FTC's determination that schools may act as

"intermediaries" or "agents" in the consent process, and that operators may "presume" that school authorizations are "based on the school's having obtained the parent's consent."

*Auer* deference is rooted in the presumption that "Congress intended for courts to defer to agencies when they interpret their own ambiguous rules." *Kisor*, 139 S. Ct. at 2414. The FTC's interpretation here more than satisfies the "important markers" for applying *Auer* laid out in the Supreme Court's recent *Kisor* decision. *See id.* at 2416-2418.

*First*, the FTC's guidance is not an "ad hoc statement." *Id.* at 2416. It was published in the Federal Register alongside the Rule itself, "by direction of the Commission." COPPA Rule, 64 Fed. Reg. at 59,915. "[P]reambles are authored by the agency itself, issued contemporaneously to provide the exclusive justification of the regulations in the event they are challenged, and as a result, generally receive the higher level of vetting internally within the agency and by the executive branch." Kevin M. Stack, *Preambles as Guidance*, 84 GEO. WASH. L. REV. 1252, 1281 (2016).

*Second*, the FTC's guidance "implicate[s] its substantive expertise." *Kisor*, 139 S. Ct. at 2417. The FTC "has been the chief federal agency on privacy policy and enforcement since the 1970s." FTC, *Protecting Consumer Privacy and Security*, https://tinyurl.com/yc4jbpqv (last visited May 29, 2020). The FTC wrote the COPPA Rule, enforces it, educates the public on it, and periodically reviews and amends it. And the specific issue here—defining what is "reasonable" in a given regulatory context—is a quintessential agency function. *See Kisor*, 139 S. Ct. at 2417 (explaining that "a disabilities office weighing the costs and benefits of an accommodation" is a question "implicat[ing] policy expertise"); *see also id.* at 2413 (plurality op.) (stating that agencies are adept at the type of "cost benefit calculation" that "sounds more in policy than in law").

13

*Third*, the FTC's guidance reflects its "fair and considered judgment." *Id.* at 2417. The FTC's longstanding view is not a "convenient litigating position" or a "post hoc rationalizatio[n]." *Id.* Nor is it a "new interpretation … that creates unfair surprise to regulated parties." *Id.* at 2418 (citation omitted). Deferring to the FTC here will not "impose[] retroactive liability on parties for longstanding conduct that the agency had never before addressed." *Id.*

To the contrary, it is the Attorney General who would "create[] unfair surprise," "impose[] retroactive liability … for longstanding conduct," and—most perilously—throw into chaos the legal arrangements between tens of thousands of schools and companies like Google, at a moment when technology-facilitated remote learning is more vital than ever.

### E.    The Attorney General's Remaining COPPA Theories Fail

In addition to untenably contending that Google may not rely on schools to provide or obtain parental consent, the Complaint raises two other COPPA theories. Both fail to state a claim.

First, the Complaint alleges that Google fails to provide parents the ability to meaningfully review or limit the data collected in connection with GSFE. This conclusory assertion is not supported by specific allegations describing what parents can and cannot do, or why the level of access afforded by Google is insufficient. And the Court can take judicial notice of the GSFE Privacy Notice (conveniently omitted from the Complaint), which provides:

> The parents of G Suite for Education users in Primary/Secondary (K-12) schools can access their child's personal information or request that it be deleted through the school administrator. … If a parent wishes to stop any further collection or use of the child's information, the parent can request that the administrator use the service controls available to them to limit the child's access to features or services, or delete the child's account entirely.

Neiman Decl. Ex. 1 at 3.

14

Second, the Complaint suggests that Google improperly conditions access to GSFE on expansive and unnecessary data collection and use.  This allegation simply restates the legal standard, *see* 16 C.F.R. § 312.7, without pleading any facts to support it, such as what specific information Google requires users to provide.  These "naked assertion[s] … without some further factual enhancement" are facially insufficient and must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## II.    THE COMPLAINT IDENTIFIES NO UPA VIOLATION

The Complaint's UPA cause of action proceeds under three different legal theories:  (1) that Google made material misrepresentations and omissions concerning its privacy practices, Compl. ¶¶ 76-79; (2) that Google's alleged violation of COPPA is a *per se* violation of the UPA, Compl. ¶¶ 73-75; and (3) that Google engaged in unconscionable practices, Compl. ¶¶ 80-81. Each of those theories fails for multiple, overlapping reasons.

### A.    The Attorney General Has Not Alleged Any Sale, Lease, Rental, or Loan In Connection with GSFE

The UPA prohibits both "[u]nfair or deceptive trade practices and unconscionable trade practices."  N.M. Stat. Ann. § 57-12-3.  By statute, both "unfair or deceptive trade practices" and "unconscionable trade practices" must occur "in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental, or loan, of any goods or services."  N.M. Stat. Ann. § 57-12-2(D), (E).  *See also Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1240 (D.N.M. 2015) ("[T]he plaintiff must show that the statement was made [or the offending act or practice was committed] *in connection with the sale* . . . .") (citation omitted).

The Attorney General stumbles at this threshold point because he does not allege that New Mexico schools or students purchased anything in connection with their use of GSFE; indeed, he concedes that Google offers GSFE to schools for "free."  Compl. ¶ 2.  That is fatal.

As the *Tiny Lab Productions* court held, a UPA claim must be dismissed where there are no

allegations that any New Mexico users "purchased anything" in using an app "downloadable for

free." *New Mexico ex rel. Balderas v. Tiny Lab Productions*, No. 18-854 MV/JFR, 2020 WL

2065275, at *13 (D.N.M. Apr. 29, 2020) (citing *Vigil v. Taintor*, No. A-1-CA-36634, 2019 WL

6768676,  at *8 (N.M. Ct. App. Dec. 11, 2019); *see also Hicks v. Eller*, 280 P.3d 304, 309 (N.M.

Ct. App.  2012) (no UPA claim where plaintiff never purchased anything from defendant).

The Attorney General's UPA claim also categorically fails because the GSFE agreement

is analogous to a license agreement.  The GSFE Agreement simply grants schools the right to

"use" of the GSFE services, *see* Neiman Decl. Ex. 2 at 2 (stating that "[t]he Services are

permitted for use only" and "[c]ustomer will use the Services in accordance with the Acceptable

Use Policy" in Section 2).  The schools' permitted "use" of the Core and Additional Services is

functionally the same as a contractual "temporary grant of use" of an app or a "right to use

technology," both of which fall outside the scope of the UPA.  *See Tiny Lab Prods.,* 2020 WL

2065275 at *13 ("temporary grant of use" of app not a transaction covered by UPA); *Nanodetex*

*Corp. v. Sandia Corp.*, No. 05-cv-1041, 2007 WL 4356154, at *4 (D.N.M. July 26, 2007) (same,

with regard to "right to use technology").  Simply put, licenses or other contracts for temporary

use of technology are "not the type of transaction the New Mexico Legislature intended to cover

when it enacted the UPA"—even when a plaintiff must pay an annual fee to use that technology.

*Nanodetex Corp.*, 2007 WL 4356154 at *4.

### B. The Complaint Identifies No Fraudulent Or Misleading Statement Or Omission That Violates The UPA

The Attorney General's first UPA theory is that Google made false or misleading

statements in connection with its provision of GSFE to New Mexico schools.  The majority of

the alleged false or misleading statements are insufficiently pled, however.  And the remaining

16

statements are neither inaccurate nor misleading, particularly given Google's publication of its

GSFE Privacy Notice (which the Complaint conspicuously ignores).

        1.     *Most alleged misrepresentations in the Complaint are insufficiently pled*

UPA claims are "akin to claims of fraud." *Summit Elec. Supply Co. v. Int'l Bus. Machs.*

*Corp.*, No. 1:07-CV-0431 MCA/DJS, 2009 WL 9087259, at *18 (D.N.M. Sept. 30, 2009); *see*

*also Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1209 (D.N.M. 2011)

(UPA claims alleging willful misrepresentation sound in fraud).   Thus, "to the extent that

Plaintiffs' [UPA] claims are grounded in allegations of fraud or fraudulent misrepresentation …

Rule 9(b) is applicable and requires Plaintiffs to plead their claims with particularity." *Barreras*

*v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, at *6

(D.N.M. Oct. 17, 2012).   *See also Michelson v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,

669 F. Supp. 1244 (S.D.N.Y. 1987) (applying Rule 9(b) to fraud-based New Mexico UPA

claims).   Rule 9(b) requires that a complaint "set forth the time, place and contents of the false

representation, the identity of the party making the false statements and the consequences

thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal citation omitted).

     Most of the Attorney General's fraud allegations fall well short of this mark.   He alleges

generally that Google has made material misrepresentations or omissions though "public-facing

documents such as websites, privacy policies, marketing materials, and public statements,"

Compl. ¶ 77, but then neglects to specifically identify any of these documents.   According to the

Attorney General, Google has made "public statements and promises," Compl. ¶ 4, "numerous

assurances," *id.* ¶¶ 5, 49, "its own promises," *id.* ¶¶ 10, 50, "unambiguous representations," *id.* ¶

13, "public promises," *id.* ¶ 24, and "its own privacy promises," *id.* Section V header.   But not

one of those statements is specific enough to "put[] defendant[] on notice of the allegedly

fraudulent conduct so that [it] can formulate a defense." *Two Old Hippies*, 784 F. Supp. 2d at 1208.

Nor are the cherry-picked snippets of various unidentified webpages (Compl. Figures 1-4) sufficient for purposes of Rule 9(b). *See also* Compl. ¶ 31 ("Google webpages"). The Complaint's theory appears to be that these excerpts are misleading because they omit additional information about Google's privacy practices, but the Complaint does not identify the "particular information that should have been disclosed," as Rule 9(b) requires, and does not even provide the complete statements at issue. *See SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1277-1278 (D. Colo. 2006) (for omissions claims, "Rule 9(b) is satisfied if the Complaint alleges the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.").

> 2. *The Complaint does not plausibly allege that Google fails to comply with the identified privacy commitments*

The Attorney General's main fraud argument appears to be that Google regularly engages in activities that violate its commitments under the Privacy Pledge. *See* Compl. ¶ 29. But the Pledge forecloses none of the data-collection activities about which the Attorney General complains. The Attorney General has thus failed to plead that Google's adoption of the Pledge constitutes a "false or misleading" representation. N.M. Stat. Ann. § 57-12-2(D); *Dollens v. Wells Fargo Bank, N.A.*, 356 P.3d 531, 537 (N.M. Ct. App. 2015).

The Pledge is a voluntary set of promises that apply only when an operator is acting in its capacity as a provider of services "both designed and marketed for use in [schools]." Neiman Decl. Ex. 5 at 2. Google tells users that the Pledge does *not* apply to Additional Services. Neiman Decl. Ex. 4 at 4. Thus, the Complaint's allegations that Google's data collection

practices in Additional Services such as YouTube violate the Pledge, *see, e.g.*, Compl. ¶¶ 5, 29, 41, fail to state a claim.  As Google discloses, the Pledge does not apply to these services, and therefore data collection practices in these services cannot violate the Pledge.

The Attorney General also alleges that Google violates the Pledge by collecting basic information in connection with the provision of the Core Services, including Chrome Sync.  *See* Compl. ¶¶ 5, 35.  Not so.  The Pledge permits education service providers to "[c]ollect, use, share, and retain student personal information only for purposes for which [they] were authorized by the educational institution/agency, teacher or the parent/student."  Neiman Decl. Ex. 5 at 1. And, as explained, Google discloses its data collection practices with regard to the Core Services in the GSFE Privacy Notice, where it commits to only use data collected in the Core Services for purposes of providing the Core Services, *see* Neiman Decl. Ex. 1 at 1, and obtains schools' consent to collect the data described in the GSFE Privacy Notice, Neiman Decl. Ex. 2 at 3. Furthermore, the Pledge expressly permits school service providers to collect information for the "development and improvement of products/services intended for educational/school use." Neiman Decl. Ex. 5 at 2.[5]

Finally, the Attorney General alleges nothing to indicate that Google has violated the main thrust of the Student Privacy Pledge—*i.e.*, its commitments not to "sell personal information," not to "use or disclose student information collected through and educational/school service … for behavioral targeting of advertisements to students," and not to "collect, maintain, use or share student personal information beyond that needed for authorized

---

[5] The Attorney General also asserts (Compl. ¶ 6) that, until April 2014, Google collected information from students' Gmail accounts.  But the Attorney General also alleges (Compl. ¶ 25) that Google did not sign the Pledge until January 2015—making Google's pre-2015 conduct irrelevant.

educational/school purposes, or as authorized by the parent/student," Neiman Decl. Ex. 5 at 1.

The Complaint does not allege that Google is selling personal information, that it is using the

information collected to target students with advertisements, or that Google has done anything it

was not authorized to do in the GSFE Agreement.  The only statement that even comes close is a

vague reference to Google's "using that data for its own commercial benefit" or "commercial

purposes."  Compl. ¶¶ 47, 49.  But those vague and conclusory statements are insufficient to

state a claim.  The letter to Congress the Attorney General cites (at Compl. ¶ 47 n.12) to show

that Google uses data from GSFE for commercial purposes addresses data collected from the

Additional Services—to which the Pledge does not apply—not data collected from the Core

Services.  Neiman Decl. Ex. 9 (February 12, 2016 Letter from Susan Molinari to Senator Al

Franken) at 5 ("Google may use the data from *additional services outside of the GAFE core*

*services* for the purposes described in our Privacy Policy, which include, for example, product

improvement and product development.") (emphasis added).[6]  Moreover, as noted above, the

Pledge itself permits Google to use data collected from the Core Services for the commercial

purpose of "development and improvement of products/services intended for educational/school

use."  Neiman Decl. Ex. 5 at 2.  The Attorney General has thus not plausibly alleged that Google

has violated the Pledge.

        3.    *Google's publication of its Privacy Notice defeats any omissions claim*

       The Attorney General also suggests that Google's statements that it does not "use

information in [the Core Services] for advertising purposes" and that "all [GSFE] core services

---

[6] As explained in *supra* footnote no. 1, the Court may consider "documents referred to in the
complaint if the documents are central to the plaintiff's claim and the parties do not dispute the
documents' authenticity."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)
(citation omitted).  Because Plaintiff cites the letter in its Complaint as central to its claims about
Google's alleged use of student data for commercial purposes, *see, e.g.*, Compl. ¶¶ 9 n.4, 47
n.12, it is properly considered on this motion.

support COPPA and FERPA compliance" are misleading because, notwithstanding those representations, Google collects data from students using the GSFE services.  Compl. ¶¶ 34-35.

The Attorney General does not argue that these statements are actually false.  Rather, his theory seems to be that those statements, while literally true, are misleading because Google allegedly does not inform schools of its data collection practices.  *See* Compl. ¶ 35.  But that ignores the GSFE Privacy Notice, which discloses in detail what data Google collects and how it may be used.  *See* Neiman Decl. Ex. 1 at 1-2.  Furthermore, the terms of that notice are incorporated into the GSFE Agreement that schools execute to obtain GSFE services.  Neiman Decl. Ex. 2 at 2-3.  The Attorney General has no reasonable argument that Google failed to disclose material facts and cannot manufacture one by omitting Google's disclosures from the Complaint.

### C. The Attorney General's COPPA-Based UPA Claims Fail On The Merits And Are Preempted

The Attorney General's remaining UPA claims are based on alleged COPPA violations.  *See* Compl. ¶¶ 73-75, 80.  They fail for two independent reasons.  First, because the Attorney General has failed to plead a COPPA violation, these claims necessarily fail.  *See supra* pp. 6-15.  And further, they are expressly preempted by COPPA itself.

"Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citation omitted).  COPPA provides that "[n]o State … government may impose any liability … in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section."  15 U.S.C. § 6502(d).  Congress's intent here is clear:  states may not impose additional (*i.e.*, inconsistent) liability for perceived COPPA violations.  The Attorney General is

limited to enforcing the COPPA regulations, *id.* § 6504(a)(1); he may not also sue for violations

of state statutes, *see Manigault-Johnson v. Google, LLC*, No. 2:18-CV-1032-BHH, 2019 WL

3006646, at *6 (D. S.C. Mar. 31, 2019) (COPPA preemption provision barred claims "predicated

on alleged violations of COPPA rather than on additional activity that violates state law.").

Even if the Complaint's COPPA-based UPA theory were not expressly preempted,

general conflict preemption would bar any state law claims that seek to impose additional

consequences for alleged COPPA violations.[7]  Conflict preemption applies "where state law

stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 795 (10th Cir. 2000)

(quoting *English*, 496 U.S. at 79).  A state law can be an "obstacle" even if "the ultimate goal of

both federal and state law is the same"; a state law is preempted "if it interferes with the methods

by which the federal statute was designed to reach that goal." *Gade v. Nat'l Solid Wastes Mgmt.*

*Ass'n*, 505 U.S. 88, 103 (1992) (citation omitted).

That is precisely the case here.  COPPA sets out a carefully designed remedial scheme,

under which enforcement authority is principally divided between the FTC and other specialized

federal agencies.  *See* 15 U.S.C. § 6505.  State attorneys general may also bring actions to

enforce the COPPA Rule, provided proper notice is given to the FTC.  *Id.* § 6504.  The structure

reflected Congress's attempt to calibrate enforcement efforts so that they "take[] into account

rapid changes occurring in the industry." *Children's Online Privacy Protection Act of 1998:*

*Hearing on S. 2326 Before the S. Comm. on Commc'ns*, 150th Cong., 115 Cong. 7 (Sept. 23,

1998) (statement of Sen. Richard H. Bryan).  Permitting states to tack on additional

---

[7] *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002) ("Congress' inclusion of an express
pre-emption clause 'does not bar the ordinary working of conflict pre-emption principles.")
(citation omitted).

consequences to COPPA violations would plainly "interfere" with the methods by which

COPPA intended to balance innovation and accountability.  *Gade*, 505 U.S. at 103.[8]

> ### D.    The Complaint's "Unconscionable" Practices Claim Also Fails Because Nothing Alleged In The Complaint Is Unconscionable

The Complaint's claim that Google's data-collection practices violate the UPA's

prohibition of "unconscionable trade practices" fails for an additional reason:  nothing alleged in

the Complaint comes close to "unconscionable" activity.  The UPA's unconscionability

provisions "evince[] a legislative recognition that, under certain conditions, the market is truly

not free, … and empower[] courts to stop and preclude those who prey on the desperation of

others from being rewarded with windfall profits."  *State ex rel. King v. B&B Inv. Grp., Inc.*, 329

P.3d 658, 671 (N.M. 2014).  To state a claim for an unconscionable trade practice, a plaintiff

must show, as applicable here, that the practice "takes advantage of the lack of knowledge,

ability, experience or capacity of a person to a *grossly unfair degree*."  N.M. Stat. Ann. § 57-12-

2(E) (emphasis added).  A mere violation of another statute will not satisfy this requirement.  *See*

*Sedillos v. United Collection Bureau, Inc.*, No. 10-CV-1063 WJ/WDS, 2011 WL 13289655, at

*2, *5 (D.N.M. Aug. 17, 2011) (finding that alleged conduct that "may violate the [Fair Debt

Collection Practices Act] does not rise to the level" of unconscionable conduct under the UPA).

Stripped of rhetoric, the Complaint alleges that Google enters into contracts with schools

to provide a set of free educational services (the Core Services).  In addition to the Core

---

[8] In *Tiny Lab Productions*, the district court found that COPPA pre-empted state law claims based on the collection of information from children as to conduct that did *not* violate COPPA, but held that COPPA did not necessarily preempt state law claims brought by the Attorney General seeking to impose liability for conduct that did violate COPPA.  *See* 2020 WL 2065275, at *12.  In so holding, the court did not examine whether such state law claims would be preempted if they sought to impose punishments that exceed those defined by COPPA. That incomplete analysis fails to give appropriate weight to Congressional intent.  In COPPA, Congress created a carefully balanced regulatory scheme.  Adding additional punishments under state law undermines that balance and is thus preempted by COPPA.

Services, Google also offers a set of services that are available to the general public (the Additional Services).  With regard to the Core Services, Google collects users' personal information as needed to provide the services.  With regard to the Additional Services, Google collects information in much the same way it does for regular consumer accounts, and additionally promises not to use that information to target ads.  For both the Core Services and Additional Services, Google contracts with schools—which, as noted, already obtain parental consent for a wide variety of school activities—to provide or obtain parental consent as needed, consistent with authoritative FTC guidance.  Moreover, there are no allegations that GSFE is the *only* option schools have for providing online educational tools, and there are clearly no "windfall profits" here since Google does not charge for GSFE.  *State ex rel. King*, 329 P.3d at 671.

This framework is a far cry from other business practices that have been found "unconscionable" under the UPA.  Google is not, for example, offering desperate borrowers short-term loans carrying a 1,147.14% annual percentage rate.  *See State ex rel. King*, 329 P.3d at 662.  Nor is it telling purchasers of car insurance that they need an add-on insurance product that it knows is worthless, *see Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-CV-00328-WJ-SCY, 2018 WL 4148434, at *7 (D.N.M. Aug. 30, 2018), or attempting to force an elderly couple out of their home by providing a mortgage under false pretenses and then attempting to foreclose on the property, *see Portales Nat'l Bank v. Ribble*, 75 P.3d 838, 842-843 (N.M. Ct. App. 2003).  The Attorney General has not identified anything approaching unconscionable activity here.

## III.   THERE IS NO INTRUSION UPON SECLUSION

The New Mexico tort of intrusion upon seclusion "involves an invasion of the plaintiff's 'private' space or solitude—eavesdropping on private conversations or peeping through the bedroom window, for example." *Moore v. Sun Publ'g Corp.*, 881 P.2d 735, 743 (N.M. Ct. App.

1994).  To survive a motion to dismiss, the Attorney General must plead 1) an intrusion, physical or otherwise, upon private affairs or concerns; 2) that is intentional; and 3) and that is highly offensive to a reasonable person.  *See* Restatement (Second) of Torts § 652B; *Kelly v. Advanta Corp.*, No. CV 02-250 LH/RHS, 2003 WL 27385023, at *1 (D.N.M. July 1, 2003) (noting that New Mexico follows the Restatement (Second) for invasion of privacy torts).  The Complaint does not allege facts that satisfy these elements.

To begin, "the tort of intrusion becomes actionable only when it is deemed 'highly offensive to a reasonable person.'"  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1217 (10th Cir. 2007).  Allegations that Google collected data from students using its educational services, and used it in a manner consistent with its disclosures, does not suffice.  Indeed, multiple courts have held such data collection and use insufficient to state a claim for intrusion upon seclusion as a matter of law.  For example, in *Nickelodeon*, the Third Circuit held that Nickelodeon's "use of cookies to track children" online was not "sufficiently offensive, standing alone, to survive a motion to dismiss."  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294-295 (3d Cir. 2016).  The District of South Carolina reached the same conclusion in *Manigault*, concluding that Google's collection of information from children who used YouTube was not highly offensive.  *See* 2019 WL 3006646, at *6.  Likewise, the Northern District of California has held that disclosure of personal information obtained by a website, even to third parties in violation of a website's terms of service, is not "highly offensive."  *Yunker v. Pandora Media, Inc.*, No. 11–CV–3113 JSW, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013).

In *New Mexico ex rel. Balderas v. Tiny Lab Productions*, the district court declined to dismiss an intrusion on seclusion claim predicated on both the alleged use of children's data to target advertising to children and the disclosure of that data to third parties, all without consent.

25

*See* No. 18-854 MV/JFR, 2020 WL 2065275, at *1-2 (D.N.M. Apr. 29, 2020).  That decision is out of step with the weight of authority, and in any event no such conduct is alleged here, where the Attorney General does not allege that the collected information is being used for targeted advertising or disclosed to third-party advertisers, but merely that Google uses the information for its own "commercial purposes," and there is no allegation that schools failed to obtain the required parental consent.  Compl. ¶¶ 4, 9, 12, 35, 47.

The Attorney General also has not alleged the type of "duplicitous behavior" that some courts have recognized might, in specified circumstances, render data collection "highly offensive."  *See Nickelodeon*, 827 F.3d at 295; *see also Manigault-Johnson*, 2019 WL 3006646, at *6.  In *Nickelodeon*, the court held that plaintiffs had stated a claim against Nickelodeon's co-defendant, Viacom, where Viacom's website contained the following message:  "HEY GROWN-UPS: We don't collect ANY personal information about your kids.  Which means we couldn't share it even if we wanted to!"  827 F.3d at 291.  Allegations that Viacom collected data about children notwithstanding that express and unequivocal statement were sufficiently "offensive" to survive a motion to dismiss.  *Id.* at 295; *see also Manigault-Johnson*, 2019 WL 3006646, at *5-*6 & n.4 (discussing *Nickelodeon*).  Nothing in the Complaint comes anywhere close to Viacom's statement in *Nickelodeon*.  As explained above, the Attorney General has not identified a single practice that was inconsistent with Google's privacy commitments in the Pledge, the GSFE Privacy Notice, or elsewhere.

Moreover, the Attorney General has not pled that the alleged intrusion upon seclusion was "intentional" as required under New Mexico law.  *See Kelly*, 2003 WL 27385023, at *1.  Under the Restatement (Second) test adopted by New Mexico, "[a]n intrusion occurs when an actor 'believes, or is substantially certain, that he lacks the necessary legal or personal

permission to commit the intrusive act.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003) (citation omitted).  None of the facts alleged in the Complaint establish that Google believed it lacked permission to collect data.  Rather, Google sought consent for its activities through the GSFE Agreement, which disclosed Google's data-collection activities, and reasonably relied on that consent to provide the services and collect data as described in the GSFE Privacy Notice.  The Complaint alleges no facts that plausibly state an intentional intrusion.

## CONCLUSION

For the forgoing reasons, the Court should dismiss the Complaint in its entirety.


RESPECTFULLY SUBMITTED this 4th day of June, 2020.

/s/ Peter G. Neiman_____

MILLER STRATVERT P.A.
Richard L. Alvidrez
500 Marquette NW, Suite 1100, 87102
P.O. Box 25687
Albuquerque, NM 87125-0687
Telephone:  (505) 842-1950
Facsimile:  (505) 243-4408
ralvidrez@mstlaw.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Peter G. Neiman (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:  (212) 230-8800
Facsimile:  (212) 230-8888
peter.neiman@wilmerhale.com

Blake Roberts (*pro hac vice*)
Molly M. Jennings (*pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
blake.roberts@wilmerhale.com

Laura Goodall (*pro hac vice*)
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone:  (628) 235-1012
Facsimile: (628) 235-1001

laura.goodall@wilmerhale.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this day, I filed the foregoing electronically through the CM/ECF system, which

caused all parties who have lawfully appeared in this action either as an individual *pro se* or as

an individual or entity represented by an admitted attorney to be served by electronic means, as

reflected in the Notice of Electronic Filing.


/s/ Peter G. Neiman
Peter G. Neiman

June 4, 2020